**Geraldean Parker Jones HULSEY,**
**Plaintiff/Appellee,**

v.

**J.L. BUSH, Jr., and wife, Betty Joyce**
**Bush, Defendants/Appellants.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

April 15, 1992.

Application for Permission to Appeal
Denied by Supreme Court
June 29, 1992.

Michael R. Jones, Springfield, for plaintiff-appellee.

Dan R. Alexander, Nashville, for defendants-appellants.

## OPINION

LEWIS, Judge.

Defendants have appealed from the judgment entered on the jury's verdict finding that defendants' deed to the property in question was null and void. Following the trial court's overruling of their motion for a new trial, defendants have appealed and present four issues for this Court's consideration.

## THE FACTS

Ned Parker and wife, Cecelia Parker, owned certain real property (the property) located in Greenbrier, Tennessee, in Robertson County. On 26 April 1975, the Parkers executed and delivered a deed to the property to their daughter, the plaintiff Geraldean Parker Jones Hulsey. The Parkers reserved a life estate to themselves. Plaintiff did not record her deed until 15 July 1985.

Ned Parker died in February 1983. On 12 July 1985, Cecelia Parker, who only had a life estate in the property, conveyed the property to J.L. Bush and Betty Bush. Betty Bush is the daughter of Ned and Cecelia Parker and a sister of plaintiff, Geraldean Parker Jones Hulsey. The Bushes recorded their deed on 12 July 1985. Cecelia Parker died on 29 May 1987.

On 27 April 1988, plaintiff filed the instant suit in the Chancery Court for Robertson County and sought to have the deed from Cecelia Parker to defendants declared "null and void."

The defendants' counterclaimed, seeking judgment against plaintiff Hulsey for improvements they allegedly made to the property and also demanded a jury to try the cause. The case came on to be heard by the court and a jury of twelve, who found upon the special issues as submitted to them as follows:

[T]hat J.L. Bush Jr. and Betty Joyce Bush had not held the subject real property for more than twenty years openly, exclusively and notoriously, which finding was adopted by the Court wherein the Court held that J.L. Bush Jr. and wife, Betty Joyce Bush, did not have an interest in the real estate hereinafter described by adverse possession; and further the jury found unanimously that J.L. Bush Jr. and wife, Betty Joyce Bush had not improved the subject real property, the jury finding unanimously that J.L. Bush Jr. and wife, Betty Joyce Bush, were not in possession of the subject property, did not act in good faith and did not have color of title,....

The court adopted the findings of the jury and dismissed defendants' counter-complaint. The court further found "without submitting the issue to the jury that there was no evidence from which the jury could determine that [the defendants] were innocent purchasers for a present valuable consideration from Cecelia Parker; [and that] therefore ... the deed [from] Ned Parker and wife, Cecelia Parker, to [plaintiff], though recorded second, takes precedence over the subsequent deed from Cecelia Parker to [the defendants] who were donees." The court then held that the deed to defendants was "null and void," and awarded plaintiff the title to the property.

On 6 February 1991, the court denied defendants' motion for a new trial and this appeal ensued.

Defendants' first issue is whether "[t]he Court committed error in not permitting into evidence conversations with the deceased [Ned Parker] in the presence of third parties concerning agreements and contracts which conversations were had in the presence of third parties present and prepared to testify."

Defendants argue that Ned Parker's actions, *i.e.*, what he did or did not do in response to a conversation that took place between Ned Parker and defendant J.L. Bush, were not hearsay.

 Defendants tendered proof that 1) J.L. Bush made a statement to Ned Parker that he, Bush, was going to build a garage on the property and after he built the garage, the property would be his and 2) that in response to this statement by J.L. Bush, Ned Parker made no verbal response, but simply turned and walked away.

Defendants insist they were prejudiced by the trial court's failure to allow them to show the foregoing because "it tended to prove why the defendant was on the property and the fact that in an adverse possession suit that the owner knew [it and] did nothing."

Defendant Mrs. Betty Bush admitted that the building of the garage and the use of the property was with both her father's and mother's permission and consent.

We are of the opinion that the trial court correctly ruled that the acts of Ned Parker were hearsay. However, even if the trial court was in error, it was harmless error. Tenn.R.App.P. 36(b).

In certain situations, silence is an intentional communication and could constitute hearsay. *Tennessee Law of Evidence* § 801.3 (2nd ed. 1990). *Tennessee Law of Evidence* § 801 defines "statement" as including "nonverbal conduct of a person if it is intended by the person as an assertion."

"Hearsay" has been defined by the courts of this State as "testimony in court or written evidence of a statement made out of court, such statement being offered as an assertion to show the truth of the matters asserted therein and resting for its value on the credibility of the out-of-court asserter."

Here, for the nonverbal act of turning and leaving by Ned Parker to be relevant, his act must be determined as an agreement that the property would be or was the defendants'.

The question then becomes: Did Ned Parker intend for his act of turning and leaving after defendant J.L. Bush made his statement to be an assertion that J.L. Bush was correct? There is nothing in the record from which it may be gleaned that this was Ned Parker's intention.

To allow the proferred evidence to be introduced would require the jury to speculate about the intent of Ned Parker. "In general terms, *Tennessee Law of Evidence*, Rule 403.2 permits a court to exclude relevant evidence if the probative value of that evidence is substantially outweighed by the dangers of an unfair trial or an inefficient judicial process." There is no evidence in the record to establish Ned Parker's intent during the incident in question. Whatever probative value this evidence may have, it is substantially outweighed by the dangers of unfair prejudice.

 Defendants also insist that even if the nonverbal conduct is hearsay, it is admissible under the state-of-mind exception. Tennessee Rule of Evidence 803(3) requires

a "statement of the declarant's then existing state of mind." There is nothing in the statement to show an existing state of mind. The statement is subject to different interpretations. It is not an expressed statement of present mental state and therefore, the state of mind exception does not apply. This issue is without merit.

Defendants' second issue is: "The Court committed error in holding that the Complaint and the Plaintiff [were] not barred by latches [*sic*] and or the statute of limitations."

This lawsuit arose as follows:

(1) Ned Parker and Cecelia Parker conveyed the property to plaintiff on 26 April 1975 and retained a life estate in the property.

(2) Prior to the death of Ned Parker, plaintiff and defendant Mrs. Bush had a conversation concerning the deed to plaintiff.

(3) Ned Parker died in 1983.

(4) Cecelia Parker who only retained a life estate, conveyed the property to defendants on 12 July 1985 and defendants recorded their deed on that same date.

(5) The plaintiff recorded her deed on 15 July 1985.

(6) Shortly thereafter defendants received a letter setting forth plaintiff's claim from James Balthrop, an attorney representing plaintiff.

(7) Cecelia Parker died 29 May 1987 and plaintiff filed the instant complaint on 27 April 1988.

The defendants argue that the plaintiff's claim is barred by laches.

"The defense of laches presents a mixed question of law and fact. Two essential elements of fact are negligence and unexcused delay on the part of the complainant in asserting his alleged claim, which result in injury to the party pleading laches. The question whether in view of the established facts, relief is to be denied—that is, whether, it would be inequitable or unjust to the defendant to enforce the complainants' right—is a question of law. 27 Am.Jur.2d Equity, § 176, pp 722–723."

*Frye v. Postal Employees Credit Union*, 713 S.W.2d 324, 326 (Tenn.App.1986) (citations omitted).

At the time Cecelia Parker made the conveyance to the defendants, she only had a life estate in the property. This was the only estate that she had to "give" when she attempted to make a gift to the defendants. "A mere volunteer stands in the shoes of his grantor...." *Gregg v. Link*, 774 S.W.2d 174, 177 (Tenn.App.1988).

The plaintiff took the property subject to the life estates retained by her mother and father and was not at liberty to enter possession of the premises until after the death of her mother on 29 May 1987. Plaintiff filed her complaint on 27 April 1988, less than one year after her mother's death. James Balthrop, on behalf of the plaintiff, wrote in 1985 to defendants informing them of plaintiff's claimed interest in the property. Under these facts the defendants did not establish negligence or inexcusable delay by the plaintiff in asserting her claim that resulted in injury to the defendants. We agree with the trial court that defendants failed to establish the affirmative defense of laches to bar plaintiff's claim.

While the defendants raise the issue of the statute of limitations, they cite no statute of limitations in their brief and this Court is unaware of a statute of limitations which would apply in this case. We agree with the trial court's finding that plaintiff's complaint was not barred by any statute of limitations. Defendants' second issue is without merit.

Defendants' third issue is: "The Court committed error in holding that the Defendants could not introduce evidence of improvements to the real property."

Defendants were allowed to present evidence that improvements had been made by them in the form of ditch work. However, the court did not allow testimony concerning the cost of the garage which was constructed in the 1960s. The trial court sustained the plaintiff's objection to

the evidence of the cost of the garage on the ground that there was no proof to show the defendants had any color of title at the time the garage was constructed.

In *Uhlhorn v. Keltner*, 723 S.W.2d 131 (Tenn.App.1986), Judge Tomlin, writing for the Court, stated:

> In our opinion, whether one seeks relief for mistaken improvements under Tenn.Code Ann. § 29–15–123 or for compensation in a court of equity, four elements must be present in order to prevail: (1) permanent improvements; (2) possession; (3) good faith; and (4) color of title.

*Id.* at 137.

The jury found specifically that the defendants were not in possession of the property, that they did not act in good faith, and that they did not have color of title. The trial court adopted the findings of the jury. There is ample evidence in the record from which the jury could have made these findings. " 'Color of title' has been defined by our Supreme Court as follows: 'It is a legal title in form or appearance by grant, or its equivalent, deed, will, inheritance in descent, or other means by which a legal title may be, and is supposed to be passed to the claimant.' " *Uhlhorn v. Keltner*, 723 S.W.2d at 137–38 (quoting *Wallace v. McPherson*, 187 Tenn. 333, 214 S.W.2d 50, 53 (1947)) Here, defendants did not have color of title until 12 July 1985.

■ Concerning defendants' good faith in regard to changes in the ditch, the defendants knew of the claim of the plaintiff at the time they made the improvements to the ditch and they continued with the improvements and made payment for the work after the plaintiff's complaint had been filed. This issue is without merit.

Defendants' fourth issue is: "The Court erred in holding that the Complaint was not barred by the provisions of T.C.A. § 66–26–104."

Tennessee Code Annotated, Section 66–26–104 provides as follows:

> **66–26–104. Rights as between transferee of decedent and purchaser from heir or devisee.**—Any such instrument entitled to registration which is not duly registered prior to the expiration of sixty (60) days following the death of the maker of any such instrument, shall be null and void as to innocent purchasers for a present valuable consideration from such person or persons as would, but for the execution of the instrument by the decedent, succeed to the rights of the decedent to such property in respect to which such unrecorded instrument was executed; provided, however, the holder or any person entitled to the benefit of any such unrecorded instrument shall have a right of action against any such transferors for the reasonable value of any such property transferred to the extent of the interest of the holder therein if brought within one (1) year of the recording of the instrument made by such transferors, if the instrument by which the transfer is made is required to be recorded for the protection of the purchaser under the laws of Tennessee, otherwise the action shall be brought within one (1) year from the consummation of such sale or transfer.

Tenn.Code Ann. § 66–26–104 (1991 Supp.).

■ Here, the defendants were not innocent purchasers for a present valuable consideration. Defendants paid no money for the subject property. It was intended as a gift from Cecelia Parker. "The legislature obviously did not intend to extend the protection of [T.C.A. § 66–26–104] to grantees who were not purchasers for value without notice, nor did it take any steps to include such persons within the protection of the existing recording statutes." *Gregg v. Link*, 774 S.W.2d 174, 177 (Tenn.App.1988).

In the case at bar, the trial court noted that since Mrs. Prince had made a valid gift of her property to the Greggs, she had nothing to give when she attempted to make a gift to Mrs. Link. We agree with the trial court and his reasoning is compatible with our Supreme Court's statement in *Simpkinson*, "Of course a mere volunteer would stand in the shoes of his grantor, and notice to the latter would be notice to him." *Simpkinson v. McGee*, 72 Tenn. (4 Lea) [432] at 439.

"Therefore, we hold that under our recording statutes a prior unrecorded deed will take precedence over a subsequent deed to a donee although the subsequent deed is recorded first."

*Gregg v. Link,* 774 S.W.2d at 177. Tennessee Code Annotated, Section 66–26–104 is inapposite to the facts here and the defendants are not entitled to the protection of the statute.

We have considered each of the issues and find them to be without merit. The judgment of the trial court is affirmed with costs assessed to the defendants and the cause remanded to the trial court for the enforcement of its judgment, the collection of costs, and for any further necessary proceedings.

CANTRELL and KOCH, JJ., concur.