# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JANICE AMARI ANDERTON v. DOMINIC JUDE AMARI

**Direct Appeal from the Circuit Court for Davidson County**
**No. 85D-3267     Muriel Robinson, Judge**

---

**No. M1999-01145-COA-R3-CV - Decided June 27, 2000**

---

This is a dispute between Plaintiff Janice Amari Anderton and Defendant Dominic Jude Amari regarding the custody of the parties' minor child and the amount of Mr. Amari's child support obligation. The trial court (1) denied Mr. Amari's request to transfer the case to Williamson County, (2) increased the amount of Mr. Amari's monthly child support obligation, (3) denied Mr. Amari's counter-petition for a change of custody, and (4) denied Mrs. Anderton's motion for discretionary costs. For the reasons set forth below, we modify the ruling of the trial court to reflect that Mr. Amari shall reimburse Mrs. Anderton for the entire cost of maintaining health insurance for the parties' minor child. In all other respects, however, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as modified; and Remanded**

FARMER, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and HIGHERS, J., joined.

Clark Lee Shaw, Nashville, Tennessee, for the appellant, Dominic Jude Amari.

Floyd Nolton Price, Nashville, Tennessee, for the appellee, Janice Amari Anderton.

## OPINION

The parties were divorced by the Circuit Court of Davidson County in May of 1987, at which time their minor son Vincent, born June 9, 1985, was placed in the custody of Mrs. Anderton. Mr. Amari was subsequently granted visitation with Vincent and ordered to pay child support to Mrs. Anderton in the amount of $400.00 per month. In June of 1997, Mrs. Anderton filed a petition seeking an increase in Mr. Amari's child support obligation. In December of 1997, Mr. Amari filed an answer to Mrs. Anderton's petition and a counter-petition seeking a change of custody. At the conclusion of a hearing on December 9, 1998, the trial court denied Mr. Amari's request for a change of custody and took the matter of child support under advisement. On December 11, 1998, Mrs. Anderton filed a motion asking the court to assess discretionary costs against Mr. Amari in the amount of $1,192.00 and requesting that a trial date be set for the hearing of the remainder of the

parties' proof with respect to the issue of child support. The trial court subsequently denied the motion for discretionary costs but set a hearing date for the remainder of the proof relative to Mrs. Anderton's petition for an increase in child support. On January 14, 1999, Mr. Amari filed a "request for transfer" asking the trial court to transfer the case to the Circuit Court of Williamson County. This transfer request was accompanied by an affidavit executed by Mr. Amari's attorney, which stated that neither of the parties continue to reside in Davidson County and that the parties' minor child has resided in Williamson County for at least six months. After a hearing on February 12, 1999, the trial court denied Mr. Amari's request to transfer the cause to Williamson County. Finally, on April 28, 1999, the trial court entered an order increasing Mr. Amari's child support obligation from $400.00 per month to $419.00 per month and providing that Mr. Amari shall pay to Mrs. Anderton $24.25 per month as reimbursement for one-half of the expense of the health insurance that Mrs. Anderton maintains for the parties' child. This appeal by Mr. Amari followed.

The issues raised by the parties on appeal, as we perceive them, are as follows:

I. Did the trial court err in refusing to transfer the case to Williamson County?

II. Did the trial court err in refusing to allow counsel for Mr. Amari to question Vincent regarding matters not specifically set forth in Mr. Amari's counter-petition for a change of custody?

III. Did the trial court err in denying Mr. Amari's counter-petition for a change of custody?

IV. Did the trial court err in setting the amount of child support to be paid by Mr. Amari to Mrs. Anderton?

V. Did the trial court err in denying Mrs. Anderton's motion for discretionary costs?

VI. Is Mrs. Anderton entitled to receive a judgment against Mr. Amari in the amount of the attorney's fees that she has incurred on appeal?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness and thus we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

***Mr. Amari's Transfer Request***

Subsequent to the hearing of proof regarding Mrs. Anderton's petition for an increase in child support but prior to the trial court's ruling on the matter, Mr. Amari filed a petition asking the court to transfer the case to Williamson County. The trial court commented that this petition was an act of "judge shopping" on the part of Mr. Amari and consequently denied Mr. Amari's request for a transfer.

The transfer of cases involving issues of child support and/or child custody is governed by sections 36-5-3001 through 36-5-3008 of the Tennessee Code Annotated. *See* Tenn. Code Ann. § 36-5-3001 to -3008 (Supp. 1999). Section 36-5-3003 authorizes the transfer of such cases as follows:

> (a) Except as provided in § 36-5-3001(b), a case which includes child support or custody provisions may be transferred between counties in this state without the need for any additional filing by the party seeking transfer, and without service of process upon the non-requesting party, by the filing of a request by the requesting party as set forth herein.
>
> *(b) The case may be transferred by the issuing court to a competent court of the county where the child or children reside if each of the following apply:*
> *(1) Neither the child or children, custodial parent/obligee, nor the non-custodial parent/obligor currently reside in the issuing county; and*
> *(2) The child or children who are subject to the support or custody order currently reside in the county to which the case is to be transferred and have resided there for at least six (6) months.*
>
> (c) A case may also be transferred for modification of support or custody to any court of competent jurisdiction in the county in which the non-custodial parent/obligor resides in this state with no six-month residency period if both the child or children subject to the support or custody order and the custodial parent/obligee reside outside this state and the custodial parent/obligee does not object after the provision of notice pursuant to § 36-5-3004. If objection is made, or if the requesting party does not seek immediate transfer without the six (6) month residency period, the requesting party may obtain transfer for modification of the order by demonstrating that the custodial parent/obligee and the child or children have resided outside this state for at least six (6) months. A transfer pursuant to this subsection shall be initiated by written request of the requesting party or department pursuant to the provisions of this part.
>
> (d) If the case has been transferred pursuant to this part, the fact that one of the parties or the child returns to the transferor county does not, by that fact alone, confer jurisdiction upon the previous transferor court. A transfer to the original issuing court requires compliance with the procedures of this part.

(e)(1) "Custodial parent" for purposes of this part means the person with whom the child resides a majority of the time in a situation where there is an order of joint custody or where there exist parenting plans pursuant to chapter 6, part 4 of this title which address issues of custody.

(2) "Custodial parent" for purposes of this part also includes, in addition to a biological or legal parent having legal custody of child, an individual to whom legal custody of the child or children has been given by a court of competent jurisdiction.

Tenn. Code Ann. § 36-5-3003 (Supp. 1999)(emphasis added). It is undisputed in the case at bar that neither Vincent, Mrs. Anderton, nor Mr. Amari currently resides in Davidson County.[1] Additionally, there is no dispute that, at the time of the filing of Mr. Amari's petition requesting a transfer, Vincent resided in Williamson County and had resided in Williamson County for at least six months. Thus, upon the request of either of the parties, the trial court was authorized to transfer the case to Williamson County. *See* Tenn. Code Ann. § 36-5-3003(b) (Supp. 1999). Mr. Amari argues on appeal that, under the circumstances of the case at bar, the trial court had no other choice under section 36-5-3003(b) but to grant his request for a transfer. Mrs. Anderton contends, however, that section 36-5-3003 confers upon the trial court the discretion to retain its jurisdiction in the case at bar, even though the requirements of section 36-5-3003(b) have been satisfied.

We agree with the position advocated by Mrs. Anderton. Section 36-5-3003 provides that a case involving issues of child support and/or child custody "*may* be transferred between counties," "*may* be transferred by the issuing court," and "*may* also be transferred for modification of support or custody." Tenn. Code Ann. § 36-5-3003 (Supp. 1999)(emphasis added). The use of the word "may" rather than the word "shall" suggests that the trial court is not directed to grant the request for a transfer but, rather, has the discretion to examine the facts with which it is presented and determine whether the request for a transfer should be granted. In the case at bar, the trial court had already heard a significant portion of the parties' proof relative to Mrs. Anderton's petition for an increase in child support at the time that Mr. Amari filed his petition asking the court to transfer the matter to Williamson County. Thus, if the trial court had transferred the case to Williamson County prior to the resolution of Mrs. Anderton's petition, this proof would have had to be reheard, causing the parties to incur additional costs and attorney's fees and resulting in a waste of judicial resources. On appeal, counsel for Mr. Amari candidly admits that, in asking for a transfer, he was, in fact, "judge shopping" and that the allowance of the practice of "judge shopping" is an ancillary result not intended by section 36-5-3003. Section 36-5-3001 states that the statutes governing the transfer of cases involving child support and/or child custody shall be liberally construed to effectuate their purpose, which is "to provide procedures for the intercounty enforcement and modification of child support and child custody cases." Tenn. Code Ann. § 36-5-3001(a) (Supp. 1999). The purpose of

---

[1] Mr. Amari testified at trial that he resides in both Williamson County and in Colorado but that his legal residence is in Colorado. Additionally, at the hearing on Mr. Amari's transfer petition, counsel for Mrs. Anderton conceded that Mrs. Anderton and Vincent reside in Williamson County and that Mr. Amari is a resident of Colorado.

section 36-5-3003 is not to allow for the transfer of a case simply because, after the presentation of a portion of the parties' proof, one of the parties anticipates that the trial judge is not going to rule in his or her favor. Accordingly, under the circumstances of the case at bar, we conclude that the trial court did not abuse its discretion in denying Mr. Amari's request to transfer the case to Williamson County during the pendency of Mrs. Anderton's petition for an increase in child support.

### *Child Custody*

During the presentation of the parties' proof relative to Mr. Amari's counter-petition for a change of custody, the trial court refused to allow counsel for Mr. Amari to ask questions regarding an incident involving the alleged abuse of Vincent's dog by Mrs. Anderton's husband. Despite the court's ruling, Mr. Anderton's ex-wife subsequently testified, without objection, that Mr. Anderton had kicked her daughter's (and Vincent's) dog down the back stairwell. Additionally, Mr. Anderton's daughter testified, again without objection, that her father had abused their dog Midnight in front of her and Vincent. Specifically, she recalled one incident in which Mr. Anderton was angry because Midnight had chewed on a ball that had blown off of the porch and consequently took Midnight's head and punched it against the concrete. Thus, because there is testimony in the record regarding Mr. Anderton's alleged abuse of Vincent's dog, we conclude that the trial court's initial exclusion of this evidence could not have prejudiced Mr. Amari and that any error with respect to the court's ruling on this matter was harmless. *See Hulsey v. Bush*, 839 S.W.2d 411, 413 (Tenn. Ct. App. 1992); *Keith v. Murfreesboro Livestock Market, Inc.*, 780 S.W.2d 751, 757 (Tenn. Ct. App. 1989); T.R.A.P. 36(b); T.R.E. 103(a). The court also refused to allow counsel for Mr. Amari to question Vincent regarding a list that he had prepared prior to trial. Counsel for Mr. Amari failed, however, to make an offer of proof with respect to this list. Thus, because the content of the list and the testimony that Vincent was expected to give regarding the list were not properly preserved in the record, we are unable to review the trial court's exclusion of this evidence on appeal. *See, e.g., Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997); T.R.E. 103(a)(2).

Mr. Amari also contends that the trial court erred in concluding that Vincent should remain in the custody of Mrs. Anderton and in consequently denying his counter-petition for a change of custody. When considering a non-custodial parent's request for a change of custody, the court must first determine whether there has been a material change in circumstances arising subsequent to the initial decree awarding custody such that the welfare of the child demands a redetermination of custody. *See, e.g., Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)(citing *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981)). If there has been a material change in circumstances, the court must then determine whether a change of custody is in the best interests of the child. *See, e.g., Varley v. Varley*, 934 S.W.2d 659, 665-66 (Tenn. Ct. App. 1996)(quoting *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993)); Tenn. Code Ann. § 36-6-106 (Supp. 1999). When determining what is in the child's best interest, the court will consider all relevant factors, including as follows:

(1) The love, affection and emotional ties existing between the parents and child;

-5-

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106 (Supp. 1999); *See also Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996)(providing further examples of factors that may be relevant when making a child custody determination).

Mrs. Anderton concedes on appeal that the testimony at trial established that Vincent has experienced some conflict with her husband and that this conflict is a material change in circumstances warranting a redetermination of custody. Thus, we now consider whether the evidence preponderates against the trial court's finding that it is in Vincent's best interest to remain in the custody of Mrs. Anderton. There is no dispute that there is love and affection between Vincent and both Mr. Amari and Mrs. Anderton. Similarly, we have no doubt that Vincent would be provided with food, clothing, medical care, education, and other basic necessities if in the custody of either of the parties. For the majority of Vincent's life, Mrs. Anderton has served as Vincent's primary caregiver and has provided a safe, stable, and satisfactory living environment for Vincent. It is notable, however, that if Vincent was removed from Mrs. Anderton's custody and placed in the custody of Mr. Amari, he would continue to attend the same school, as the parties maintain

residences in the same school district.[2]  Both of the parties have remarried and, with their new spouses, have formed stable family units.  Neither of the parties appears to have any mental or physical health problems that would effect his or her ability to care for Vincent.  Vincent is an average to above average student, exhibits good behavior at school, and is active in the school band.  At trial, Vincent testified that his preference is to live with Mr. Amari.  When asked why he desired to live with Mr. Amari, Vincent stated that he does not like living with Mrs. Anderton because he is afraid of Mrs. Anderton and his step-father.  Specifically, Vincent testified that when Mrs. Anderton gets angry, she yells, stomps around, and throws things at him.  Vincent also recalled an incident in which his step-father punched him twice in the chest, an incident in which his step-father stomped on his foot, an incident in which his step-father slapped him on the leg, and an incident in which his step-father jerked his head back.  Finally, Vincent testified that, when he was little, his step-father used to discipline him by smacking him in the head.  There is much testimony in the record regarding the character and behavior of Mrs. Anderton's husband and the conflicts that have occurred between Vincent and his step-father.  Specifically, we are troubled by the allegations concerning abusive behavior on the part of Mrs. Anderton's husband toward Vincent and his dog.  Additionally, there is testimony in the record suggesting that Mrs. Anderton and her husband routinely use racial epithets in the presence of Vincent which, if true, certainly would not reflect favorably on their character.  Finally, there is nothing in the record to suggest that either of the parties is incapable of performing his or her parenting responsibilities.  Additionally, we recognize that there is a long history of conflict between the parties and that, on isolated occasions, Mrs. Anderton has allegedly prevented Vincent from calling Mr. Amari on the telephone.  However, we think that both of the parties understand the importance of Vincent maintaining a close relationship with both of his parents and are willing to facilitate and encourage such a relationship.

When reviewing the court's ruling on Mr. Amari's counter-petition for a change of custody, we are mindful that trial courts are afforded a great deal of discretion in cases involving child custody.  *See, e.g., Gaskill*, 936 S.W.2d at 631.  Such cases often hinge on witness credibility and, because trial courts have an opportunity to observe witnesses and their demeanor, they are in a better position than appellate courts to evaluate credibility.  *See Gaskill*, 936 S.W.2d at 631; *Scarbrough v. Scarbrough*, 752 S.W.2d 94, 96 (Tenn. Ct. App. 1988).  In the case at bar, many of the accusations that cause this Court concern, such as the existence of abuse and the use of racial epithets, were denied by Mrs. Anderton.  Additionally, we note that the trial court's order specifically prohibits Mrs. Anderton's husband from using corporal punishment as a means of disciplining Vincent.  Given this safeguard, as well as the proof as a whole, we cannot say that the evidence preponderates against the trial court's finding the it is in the best interests of Vincent to remain in the custody of Mrs. Anderton.  We therefore affirm the trial court's denial of Mr. Amari's counter-petition for a change of custody.

### *Child Support*

---

[2]Although Mr. Amari is a legal resident of Colorado, he testified that he lives primarily in Tennessee at his residence in Williamson County.

After a hearing on Mrs. Anderton's petition requesting an increase in child support, the trial court set Mr. Amari's child support at $419.00 per month and further ordered Mr. Amari to pay Mrs. Anderton $24.25 per month as reimbursement for one-half of the cost of the health insurance that Mrs. Anderton maintains for Vincent. Mrs. Anderton argues on appeal that Mr. Amari is voluntarily underemployed, that the trial court should have increased his child support obligation based on an imputed income of $50,000.00 per year, and that Mr. Amari should have been required to reimburse her for the entire cost of maintaining health insurance for Vincent rather than for only one-half of this cost.

The Tennessee Child Support Guidelines provide that, "[i]f an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience." Tenn. Comp. R. & Regs. ch. 1240-2-4-.03 (3)(d) (1994). Mr. Amari is a licensed geologist and a licensed pilot. Although he is self employed, Mr. Amari works as a consultant through a business known as Environmental Associates. Mr. Amari admitted at trial that his wife pays a large portion of their family's bills. In support of her position that Mr. Amari is capable of earning $50,000.00 per year, Mrs. Anderton suggests on appeal that Mr. Amari works only twenty to twenty-three hours per week and that he has chosen to limit his hours in order to assist in caring for the three children that live in his home. There is no evidence in the record, however, that supports this allegation. While it is possible that testimony was heard regarding this issue during a March 4, 1999 hearing on Mrs. Anderton's petition requesting an increase in child support, no transcript of this hearing has been included in the record on appeal. In ruling on Mrs. Anderton's petition for an increase in child support, the trial court found that Mrs. Anderton did not meet her burden of proving that Mr. Amari was underemployed. We cannot say that the evidence preponderates against this finding.

When determining the amount of a non-custodial parent's child support obligation, trial courts must apply as a rebuttable presumption the amounts set forth in the Tennessee Child Support Guidelines. *See* Tenn. Code Ann. § 36-5-101(e)(1) (Supp. 1999). Trial courts have limited discretion to deviate from these guidelines, however, in certain situations. ***See Jones v. Jones***, 930 S.W.2d 541, 544 (Tenn. 1996); ***Nash v. Mulle***, 846 S.W.2d 803, 805 (Tenn. 1993); ***Bowers v. Bowers***, 956 S.W.2d 496, 499 (Tenn. Ct. App. 1997). For example, Rule 1240-2-4-.04 of the guidelines provides in pertinent part as follows:

(1) Since these percentage amounts are minimums, the court shall increase the award calculated in Rule 1240-2-4-.03 for the following reasons:

(a)     If the obligor is not providing health insurance for the child(ren), an amount equal to the amount necessary for the obligee to obtain such insurance shall be added to the percentage calculated in the above rule.

Tenn. Comp. R. & Regs. ch. 1240-2-4-.04 (1)(a) (1997). Under this rule, the obligation to either provide or pay for the child's health insurance is clearly placed on the non-custodial parent. In the case at bar, Mrs. Anderton maintains health insurance for Vincent. The trial court ordered Mr. Amari to reimburse Mrs. Anderton for only one-half of the cost of this insurance, or $24.25 per month. Because we conclude that the cost of Vincent's health insurance is solely the obligation of Mr. Amari, we modify the trial court's ruling to reflect that Mr. Amari shall pay $48.50 per month to Mrs. Anderton as reimbursement for the cost of maintaining health insurance for Vincent.

### *Discretionary Costs*

Mrs. Anderton also contends that she incurred $1,192.00 for the taking of depositions as a result of Mr. Amari's failure to provide her with proof of his income and that the trial court should have awarded her this amount as discretionary costs. Rule 54.04 of the Tennessee Rules of Civil Procedure, which authorizes the trial court to award discretionary costs, provides in pertinent part as follows:

> (2) Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs.

T.R.C.P. 15.04(2). Trial courts are afforded a great deal of discretion when considering whether to award costs. Accordingly, absent a clear abuse of discretion, appellate courts generally will not alter a trial court's ruling with respect to costs. *See, e.g., Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56, 60 (Tenn. 1992)(citing *Lewis v. Bowers*, 392 S.W.2d 819, 823 (Tenn. 1965); *Mitchell v. Smith*, 779 S.W.2d 384, 392 (Tenn. Ct. App. 1989)). Under the circumstances of the case at bar, we do not think that the trial court abused its discretion in failing to award costs to Mrs. Anderton. Accordingly, the court's denial of Mrs. Anderton's motion for discretionary costs is affirmed.

### *Attorney's Fees*

Finally, Mrs. Anderton requests that she be awarded a judgment equal to the amount of the attorney's fees that she has incurred on appeal. In our discretion, we conclude that this request should be denied.

### *Conclusion*

Based on the foregoing, the trial court's ruling on Mrs. Anderton's petition for an increase in child support is modified to reflect that Mr. Amari shall pay to Mrs. Anderton $48.50 per month as reimbursement for the costs incurred by Mrs. Anderton in maintaining health insurance for

Vincent.  In all other respects, however, the ruling of the trial court is affirmed.  The costs of this appeal are assessed to Mr. Amari, for which execution may issue if necessary.